

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

IRENE A. ROUNTREE,

Plaintiff,

v.   607CV014

WASHINGTON NATIONAL INSURANCE COMPANY,

Defendant.

## ORDER

## I. INTRODUCTION

In this insurance benefit case the parties dispute the maximum amount payable under plaintiff Irene Rountree's "Home Health Care Policy" ("Policy"). Doc. # 10 (amended complaint). Rountree claims Washington National Insurance ("Washington") cut off her benefits after payments reached the policy's "Lifetime Maximum Benefit Amount" ("Maximum Amount"). Rountree argues that a policy clause requires the Maximum Amount to be increased by 8% each year. *Id.* at 2. She thus seeks a declaratory judgment (based on the terms of the contract or promissory estoppel), as well as damages for breach of contract, bad faith denial of insurance benefits under O.C.G.A § 33-4-6, fraud, and negligent misrepresentation. *Id.* at 2-8. Washington moves to dismiss all claims,[1] while Rountree moves for partial summary judgment on her declaratory judgment and breach of contract claims. Doc. ## 6, 11, 16.

## II. BACKGROUND[2]

In 1992, Rountree bought the Policy from Pioneer Life Insurance Company, Washington's predecessor. Doc. # 13, exh. B at 1. After Rountree requested "the maximum benefits available," the insurance agent explained that "for an additional premium, the Lifetime Maximum Benefit Amount and the Per Occurrence Maximum Benefit of [the] policy would increase by 8% each year for as long as [Rountree] maintain[ed] the policy." *Id.* at 2.

Rountree relied on that representation in purchasing the contract and would not have paid the additional premium if the agent told her the 8% increase applied only to the daily benefit

---

[1] "Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to the dispute, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1264 (11th Cir. 2006) (cite omitted). These four elements are met here, so though the Policy itself is not attached to the Complaint, the Court will refer to its undisputed contents in adjudicating Washington's motions.

[2] Washington moves to dismiss, and Rountree cross-moves for summary judgment. Typically when adjudicating a motion for summary judgment, the Court "views the evidence in the light most favorable to the non-moving party." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Where both parties move (whether cross-motions for summary judgment, or a motion to dismiss and a cross-motion for summary judgment as here) a different set of facts controls each motion. Here, however, Rountree's motion is based entirely on the undisputed language of the insurance contract. For brevity's sake, the Court will recite the facts as described in Rountree's amended complaint, but will adjudicate her motion for summary judgment without reference to anything but the undisputed contract language.

amounts and not the maximum amounts. *Id.* Furthermore, because she believed the 8% increase applied to the maximum amounts, she forewent "purchasing additional coverage at an age when such coverage was available and affordable." *Id.*

The Policy opens with an index and a Schedule -- "a statement that is attached to a document and that gives a detailed showing of the matters referred to in the document," BLACK'S LAW DICTIONARY 1372 (8th ed. 2004). Doc. # 6, exh. A at 2-3. The index indicates that the Policy's benefits are listed on pages 5-6. Doc. # 6, exh. A at 2. The benefits Schedule contains the following:

```
HOME HEALTH CARE DAILY BENEFIT
    IF PREAUTHORIZED                    $180/DAY
    IF NOT PREAUTHORIZED                $135/DAY

LIFETIME MAXIMUM BENEFIT AMOUNT         $250,000

PER OCCURRENCE MAXIMUM BENEFIT  $150,000/ILLNESS

AUTOMATIC BENEFIT INCREASE PERCENTAGE
                              BENEFITS INCREASE
                              BY 8% EACH YEAR.
ADDITIONAL PREMIUM FOR THIS BENEFIT     $295.00
```

*Id.* at 3. Pages 5-6 list the following benefits:

**A. HOME HEALTH CARE**

....

**B. DAILY BENEFIT INCREASE OPTION:** The Schedule states whether you have this option. If you have this option, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page on each policy anniversary. Note: Remember to refer to the Schedule Page to know whether you have the Benefit Increase Option.

....

**E. PER OCCURRENCE MAXIMUM BENEFIT:** No further benefits will be payable for a sickness or injury when the total sum of Home Health Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

**F. LIFETIME MAXIMUM BENEFIT:** This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.

*Id.* at 5-6.

After purchasing the policy Rountree's condition deteriorated, necessitating full-time home healthcare. Doc. # 13, exh. A at 3. Washington paid Rountree benefits pursuant to this policy until payments reached the $250,000 Maximum Amount.[3] Rountree contends that $250,000 is no longer the maximum amount because the contract required that 8% be added to the Maximum Amount per year (since 1992). Therefore, she concludes, Washington is violating the contract by refusing to pay her additional benefits.

---

[3] Though neither party affirmatively states the amount Washington has paid on the Policy, Rountree notes that "Defendant contends the per occurrence maximum benefit and the lifetime benefit of the policy are exhausted." Doc. # 10 at 2. Because the Court is given no other Maximum Amounts by the parties, it is assumed, for purposes of this Order only, that Washington has paid her $250,000.

By Rountree's reading, then, the Maximum Amount for each post-purchase year would be:

New Max = Previous Max
+ 8% of Previous Max

1992: $250,000
1993: $270,000 ($250k + 8% of $250k)
1994: $291,600 (etc.)
1995: $314,928
1996: $340,122.24
1997: $367,332.02
1998: $396,718.58
1999: $428,456.07
2000: $462,732.56
2001: $499,751.16
2002: $539,731.25
2003: $582,909.75
2004: $629,542.53
2005: $679,905.93
2006: $734,298.40
2007: $793,042.27

Thus, Rountree claims that Washington is contractually obligated to pay her up to $793,042.27, not $250,000.

III. ANALYSIS

The case turns on whether the terms of the contract contemplate an 8% increase in the Lifetime and Per-Occurrence Maximums. Under Georgia law, the Court

> must try to ascertain the intention of the parties by looking to the insurance contract as a whole. *James v. Pa. Gen. Ins. Co.*, 167 Ga.App. 427, 431(2), 306 S.E.2d 422 (1983). In determining the intention of the parties, [the Court] must first take into consideration the ordinary and legal meaning of the words employed in the insurance contract. *Id.* If the terms of the contract are plain and unambiguous, the contract must be enforced as written, *Fidelity etc. Co. of Md. v. Sun Life Ins. Co.*, 174 Ga.App. 258, 260(1), 329 S.E.2d 517 (1985), so long as it is within the prescribed bounds of the law, *Standard Guar. Ins. Co. v. Davis*, 145 Ga.App. 147, 151, 243 S.E.2d 531 (1978). If an ambiguity is present, the policy should be construed in favor of the insured and to provide maximum coverage.

*Ryan v. State Farm Mut. Auto. Ins. Co.*, 261 Ga. 869, 872 (1992).

Rountree first argues that the Policy's terms plainly and unambiguously contemplate an 8% increase in the two Maximum Benefit Amounts (Maximum Lifetime and Maximum Per Occurrence). She points to the Policy's Schedule (which does not form part of the terms of the contract; rather, it is merely a statement providing details to which the terms of the contract refer, *see* BLACK'S LAW DICTIONARY 1372 (8th ed. 2004)), and argues that, because the Schedule lists the Health Care Daily Benefits ($180 per day if preauthorized, $135 per day if not preauthorized), the two Maximum Benefit Amounts, and then the "Automatic Benefit Increase Percentage," the parties clearly intended for the "Automatic Benefit Increase Percentage" to apply to all items listed above it.

The thrust of Rountree's argument is that "[t]he term Automatic Benefit Increase Percentage is not defined anywhere in the Policy except on the schedule page where its definition is 'benefits increase by 8% each year.' There is no limitation in that definition as to what benefits increase each year." Doc. # 12 at 6.

3

However, as Rountree herself points out, the definition of "Automatic Benefit Increase Percentage" in the Schedule does not describe which "benefits" increase. Thus, the Court rejects her argument that the Schedule *unambiguously* contemplated application of the Automatic Benefit Increase Percentage to the Maximum Amounts.

Furthermore, the Schedule must not be viewed in a vacuum. Rather, the Policy must be interpreted as a whole. So viewed, the Policy is unambiguous. Rountree's argument -- that the term "Automatic Benefit Insurance Percentage" is not *defined* elsewhere in the contract -- proves too much; the reason the term is not defined anywhere else in the Policy is that Rountree is pointing to the definition and claiming it as a term of the contract.

In fact the term Automatic Benefit Increase Percentage does appear in other parts of the contract, and where it does the Schedule is referenced to provide the definition. Specifically, the term appears as part of the "Daily Benefit Increase Option" -- which is a Policy benefit listed on page 5. There the Policy states: "[i]f you have this option, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page on each policy anniversary." Doc. # 6, exh. A at 5.

To determine whether the "Automatic Benefit Increase Percentage" applies to the Maximum Amounts, the Court need only reference the description of those Maximum Amounts in the Policy's benefits section (*id.* at 5-6). The Maximum Benefit amounts are defined as follows:

E. **PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

F. **LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.

*Id.* at 6. These definitions do not refer to the "Automatic Benefit Increase Percentage." They refer only to the "Per Occurrence Maximum Benefit" and the "Lifetime Maximum Benefit Amount," both of which are fixed amounts defined in the Schedule.

Viewing the Policy as a whole, it is unambiguous that the definition of "Automatic Benefit Increase Percentage" in the Schedule did not apply to any of the benefit limits listed on the Schedule. It was merely a defined phrase to be referenced in the terms of the contract. Because the "Lifetime Maximum Benefit" contemplated by the Policy in subsection F on page 6 contains no reference to the "Automatic Benefit Increase Percentage," the 8% increase does not apply to the "Lifetime Maximum Benefit."

4

Rountree's motion for summary judgment on her declaratory judgment and breach of contract claims is therefore denied. Washington's motion to dismiss those claims is granted. Furthermore, because there can be no "bad faith" denial of benefits where benefits were not owing, *see Moon v. Mercury Ins. Co. of Ga.*, 253 Ga.App. 506, 507 (2002) (issue is whether insurance company had a reasonable and probable cause for refusing to pay a claim), Washington's motion to dismiss Rountree's O.C.G.A. § 33-4-6 "bad faith" claim is granted.

Washington next moves to dismiss Rountree's fraud and negligent misrepresentation claims. Claims for fraud and negligent misrepresentation require reasonable reliance on a misrepresentation. *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, \_\_\_ Ga.App. \_\_\_, 2007 WL 840998 at *3 (3/21/07) (citing *Newitt v. First Union Nat. Bank*, 270 Ga.App. 538, 546 (2004) (in order to prove negligent misrepresentation, plaintiff must establish that he or she reasonably relied upon the false information); *GCA Strategic Investment Fund, Ltd. v. Joseph Charles & Assoc.*, 245 Ga.App. 460, 464 (2000) (essential element of fraud claim is that plaintiff justifiably relied on the false representations)). Washington argues that a "merger clause" in the Policy foils Rountree's reliance claim. *Pennington v. Braxley*, 224 Ga. App. 344, 346 (1997).

Rountree responds that "[i]n each and every case cited by [Washington], the oral representations at issue were contradicted by the written contract. That is not the case here." Doc. # 25 at 4. Actually, that is precisely the case here. *See supra.* The insurance agent made representations to Rountree that the Maximum Amounts would increase by 8% each year; the unambiguous terms of the Policy show otherwise. The Policy also contains a clause stating that "[t]his policy, application and any attachments, is the entire contract of insurance. No agent may change it in any way." Doc. #16, exh. A at 6. Therefore, any reliance Rountree may have placed in the agent's words in the face of the Policy's unambiguous terms was unreasonable.

Washington's motion to dismiss the negligent misrepresentation and fraud claims therefore is granted. In light of this result, the Court need not address Washington's argument regarding the applicability of Georgia's four-year statute of limitations.

Finally, Rountree invokes promissory estoppel.

> Under Georgia law, promissory estoppel is a doctrine wherein consideration is supplied by the reliance of the promisee on the promise of another. Under the Georgia action for promissory estoppel, the essential elements are that: (1) the defendant made a certain promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, forgoes, or rendered a valuable right

*Everts v. Century Supply Corp.*, 264 Ga.App. 218, 220 (2003). Read together, elements (2) and (3) require that the promisee's detrimental reliance be reasonable. *See Gerdes v. Russell Rowe Commc'ns, Inc.*, 232 Ga.App. 534, 536 (1998) ("Promissory estoppel cannot be applied unless the promisee reasonably relied on the promise" (quotes omitted)).

Roundtree argues that (1) Washington's agent promised that the Maximum Amounts would increase by 8% per year; (2) Washington's agent should have reasonably expected Rountree to rely on his promise; (3) Rountree detrimentally relied on the promise; and (4) injustice can only be avoided by enforcement of the agent's promise. As discussed *supra*, however, any reliance Rountree may have placed on the agent's representations was unreasonable as a matter of law. The written contract specifically states that it represents "the entire contract of insurance," such that any oral representations made that were not part of the written contract were nullified. Thus, this claim also fails.

The Court does not lightly dismiss Rountree's allegations. It is far too easy for unscrupulous insurance salespeople to exaggerate coverage limits to induce a sale, and surely many customers fail to appreciate the power of a merger clause. Yet, this Court is obligated to apply Georgia law as it finds it. Here, the contract's merger clause incorporated all previous dealings, and the policy's terms unambiguously applied the 8% increase only to the daily benefits, not the Maximum Amounts.

## IV. **CONCLUSION**

Plaintiff Irene Rountree's motion for partial summary judgment is ***DENIED***. Doc. # 11. Defendant Washington National Insurance Company's motions to dismiss are ***GRANTED***. Doc. ## 6, 16. This case is ***DISMISSED WITH PREJUDICE***.

This 24 day of May, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA